IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 30, 2007

## STATE OF TENNESSEE v. TOMMY LEE HENRY

**Appeal from the Criminal Court for Sullivan County**
**No. S50,301     R. Jerry Beck, Judge**

———————

**No. E2006-00466-CCA-R3-CD - Filed March 22, 2007**

———————

The defendant, Tommy Lee Henry, was convicted by a Sullivan County jury of tampering with evidence, a Class C felony, and a third offense of possession of cocaine, a Class E felony. The defendant was sentenced as a Range I, standard offender to four years for the tampering conviction and two years for the possession conviction to be served concurrently in the Department of Correction. In this appeal, the defendant claims that the trial court erred in denying his motion to suppress. He claims that the police illegally detained him when they found him inside a parked car with two other individuals in a high-crime area at approximately 3:00 a.m. and that they illegally seized evidence during the detention. We hold that the trial court properly denied the motion, and we affirm its judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Stephen M. Wallace, District Public Defender, and Terry L. Jordan, Assistant Public Defender, for the appellant, Tommy Lee Henry.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the hearing on the defendant's motion to suppress, Officer Steve Summey of the Kingsport Police Department testified that he was patrolling a housing project, Riverview Apartments, at approximately 3:00 a.m. on November 26, 2004. He described Riverview as a "high drug area" and said that narcotics were commonly sold on the streets. He said that he noticed a truck parked in the courtyard and that the engine and lights were turned off. He said he saw three people in the truck, which he approached. He said he saw the defendant, who is black, and a woman and

another man, both white, in the truck. He said that the neighborhood was comprised of eighty-five to ninety percent African-American residents and that he would have investigated the truck without regard to the race of the occupants. He recognized the defendant, who was seated on the passenger side of the truck, but he did not recognize the man in the driver's seat or the woman in the middle as individuals he had seen before in the Riverview community. Officer Summey said he was familiar with the defendant from a prior case involving the defendant selling drugs in Riverview.

Officer Summey spoke with the man on the driver's side of the truck, who told the officer he was in Riverview because he was visiting a friend. Officer Summey said, however, that the man could not identify his friend by name or give his friend's apartment number. He said that as he was speaking with the man, Officer Tom Wayt arrived and approached the defendant on the passenger side of the truck. Officer Summey said that he obtained consent to search the truck from the driver and that the defendant got out of the passenger side of the truck and had a discussion with Officer Wayt. Officer Summey said that he could not hear all the discussion but that he heard Officer Wayt ask the defendant why he was so nervous.

Officer Summey said that he was familiar with the practice of individuals in Riverview storing cocaine in their mouths and that he had been involved in a prior situation in which he suspected that the defendant had cocaine in his mouth. He said that as the defendant and Officer Wayt were talking, he asked the defendant if he had anything in his mouth. He said on direct examination that the defendant answered, "No," but he testified later that he did not recall how the defendant had answered. He said that he asked the defendant if he could check and that the defendant tilted his head back and opened his mouth. He said he could not see inside the defendant's mouth because of the way the defendant was positioned. He said the defendant brought his head back to a normal position and began chewing rapidly. He said that he suspected the defendant was destroying drugs that were in his mouth and that he ordered the defendant to stop chewing. He said that Officer Wayt placed his hands on the defendant's neck and that the defendant spit out a clear cellophane bag which had "a trace of small white residue" that was consistent with cocaine. Officer Summey testified that he also saw "a small white rock like substance on [the defendant's] tongue and lips" which was consistent with cocaine.

Officer Thomas Wayt testified that he arrived to assist Officer Summey. He approached the passenger side of the truck where the defendant was seated. He testified that the defendant was fidgeting, tossing a package of M&M candy back and forth, and appeared to be nervous. He said that the defendant dropped the candy, picked it up, and said, "All I did was ask for a ride. All I did was ask for a ride," despite the fact that neither Officer Wayt nor Officer Summey were speaking to the defendant at the time. Officer Wayt said that he asked the defendant to step out of the truck but denied that he had detained the defendant. He said that the defendant made some statements although he did not recall their content and that at some point, Officer Summey approached them. He said Officer Summey asked the defendant if he had anything in his mouth. He testified on direct examination that the defendant responded, "No," and he testified on cross-examination that the defendant said, "Gum wrapper." He said that Officer Summey asked if he could look into the defendant's mouth and that the defendant tilted his head back and opened his mouth. Officer Wayt

said he was not able to see in the defendant's mouth. He said the defendant brought his head forward and began exaggerated chewing. He said that at that point, he could see what appeared to be a cellophane wrapper in the defendant's mouth. He said this type of packaging was consistent with crack cocaine. He said that he put his right hand on the defendant's neck but that he did not apply any pressure. He said that the defendant was told to spit out what was in his mouth but that he did not immediately comply. He said the defendant did eventually spit out a plastic baggie with white residue on it.

The defendant testified that there were three officers, although he could not identify the third officer. He said that the officer who was outside the passenger side of the truck asked him to get out of the truck. He said that the officer asked him what was in his hand and that he showed the officer some candy. He said that he was standing at the back of the truck and that Officer Summey said, "Mr. Henry, you know that . . . three simple possessions is a felony." He said that he stood there for approximately fifteen to thirty seconds and that all of a sudden, an officer grabbed his arm and jerked it behind his back and yelled for him to spit out what was in his mouth. He said he told the officer he had candy, which he spit out of his mouth. He said another officer came over and picked up what "was supposed to be [his] candy" but he could not see what was happening because it was dark. He said that an officer never touched his throat. The defendant said that he did not feel free to leave during the encounter and that he was just doing what the officer asked of him. He said that the officers never told him he could leave.

The defendant acknowledged on cross-examination that he had several convictions for passing worthless checks. He said that he did not know the driver of the truck and that he had just met the woman, whom he identified only as "Angela."

At the conclusion of the hearing, the court found that the Riverview area was known as a high drug use area to the police and that Officer Summey did not engage in racial profiling. The court accredited the testimony of the officers over that of the defendant.

At the trial, the officers' testimony mirrored that which they gave at the suppression hearing. The defendant did not testify at the trial.

When reviewing the denial of a motion to suppress, we must afford the trial court's findings of fact the weight of a jury verdict and affirm the denial unless the evidence in the record preponderates against the findings of fact or a rule of law has been erroneously applied. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, the application of law to the facts found by the trial court is a question of law, which we review de novo. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000) (citing State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). We consider both the evidence adduced at the suppression hearing and that presented at trial. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "Article 1, Section 7 of the Tennessee Constitution is identical in intent

-3-

and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (citation omitted). The Fourth Amendment requires officers to have reasonable suspicion before seizing a citizen. Daniel, 12 S.W.3d at 424. However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen" has a seizure occurred. Id. In determining whether a seizure has occurred, "a court must consider all the circumstances surrounding the encounter to determine whether police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter." Id. at 425 (citing Florida v. Bostick, 501 U.S. 429, 440, 111 S. Ct. 2382, 2389 (1991)). If the police-citizen encounter constitutes a seizure, then, to be valid, the officer must have "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been, or is about to be, committed." State v. Moore, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1879-80 (1968)). In determining whether an officer's reasonable suspicion is supported by specific and articulable facts, "a court should consider the totality of the circumstances – the entire picture." Moore, 775 S.W.2d at 377 (citations omitted).

With respect to probable cause to make an arrest, our supreme court has said:

> An officer may make a warrantless arrest "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." Tenn. Code Ann. § 40-7-103(a)(3) (2003). Simply stated, the officer must have "probable cause to believe the person to be arrested has committed the crime." State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000). Probable cause depends on whether the facts and circumstances and reliable information known to the officer at the time of arrest were "'sufficient to warrant a prudent [person] in believing that the [individual] had committed or was committing an offense.'" State v. Bridges, 963 S.W.2d 487, 491 (Tenn. 1997) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L.Ed.2d 142 (1964); State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982)). Probable cause must be more than a mere suspicion. Melson, 638 S.W.2d at 350.

State v. Lawrence, 154 S.W.3d 71, 75-76 (Tenn. 2005).

Turning to the facts of the case at bar, the encounter began when Officer Summey approached the parked truck in which the defendant was seated. It is not necessary for an officer to have reasonable suspicion of criminal activity to approach a vehicle parked in a public place and ask for driver identification and proof of registration. State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). Thus, the initial approach was proper.

The remaining question is whether the interaction beyond the initial approach was justifiable. We hold that it was because as the situation developed, the officers had specific, articulable facts, to which they testified at the suppression hearing and trial, to support a conclusion that criminal activity was afoot. As Officer Summey was questioning the driver, Officer Wayt had arrived and was standing outside the passenger side door near the defendant. Officer Wayt said that the defendant's behavior was suspicious in that he was acting nervous, tossing a package of candy back and forth, and making spontaneous statements about what he had been doing. Further, the defendant had a history of a prior drug arrest in the same area, of which Officer Summey was aware. The defendant was sitting in a parked truck at 3:00 in the morning in an area known for a high level of drug activity. Officer Summey was familiar with the area, and he knew neither the driver nor the woman in the truck. The driver could not name the person he claimed he was to visit, nor could he identify the individual's apartment number.

Given the developing facts, the officers had reasonable suspicion to detain the defendant briefly as Officer Summey began a consent search of the truck. During the course of that brief detention, Officer Summey developed a reasonable suspicion that the defendant had drugs in his mouth based upon the defendant's actions, a prior encounter with the defendant in which he suspected the defendant had drugs in his mouth, and the practice of concealing drugs in this manner in the community. The officers were entitled to conduct further investigation, and upon doing so, the officers observed the defendant chewing rapidly and suspected that the defendant was attempting to dispose of drugs. Officer Wayt saw a cellophane wrapper in the defendant's mouth, which was consistent with the type of packaging used for drugs in the community. The officers had probable cause to believe the defendant was committing the crime of tampering with evidence. See State v. Robert Lee Mallard, No. M2000-00351-CCA-R3-CD, Rutherford County (Tenn. Crim. App. Feb. 23, 2001) (officer had probable cause to believe defendant was committing crime of tampering with evidence when defendant raised clenched fist and inserted something into his mouth). Thus, the officers could lawfully order the defendant to spit out what was in his mouth. When the defendant did so, he produced a cellophane baggie of the type commonly used to package drugs. Further, Officer Summey observed white residue on the bag and a white rock-like substance on the defendant's mouth. These developments only added further justification to the officers' probable cause to arrest the defendant.

For these reasons, the trial court correctly denied the defendant's motion to suppress. Based upon the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE